Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Jeremy J. Kelley
Dan Fruchter
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Sep 25, 2024**

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RODERICK LENEAL SMITH,<br><br>Defendant. | Case No: 2:24-CR-109-TOR<br><br>Pretrial Diversion Agreement |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Dan Fruchter and Jeremy Kelley Assistant United States Attorneys, as well as Defendant, Roderick Leneal Smith ("Defendant"), and Defendant's counsel, Steve Hormel, agree to the following Pretrial Diversion Agreement (the "Agreement"):

**I. Overview and Information**

1. On March 18, 2024, the United States Attorney's Office for the Eastern District of Washington notified Defendant Roderick Leneal Smith ("Defendant") that the United States Small Business Administration was investigating Defendant for, *inter alia*, wire fraud, in violation of 18 U.S.C. § 1343.

2.    On August 9, 2024, the United States filed an Information charging Defendant with one count of wire fraud, in violation of 18 U.S.C. § 1343. Defendant waives indictment and consents to proceed on the Information filed in the United States District Court for the Eastern District of Washington, in connection with the Covered Conduct, as set forth below.

3.    Defendant stipulates and agrees that Defendant did in fact violate 18 U.S.C. § 1343 and that the United States could prove Defendant's guilt beyond a reasonable doubt. Defendant wishes to accept responsibility for this conduct. Accordingly, Defendant stipulates and agrees to the following facts, referred to herein as the "Covered Conduct":

The Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and other certain expenses, through a program referred to as the Paycheck Protection Program (PPP).

In order to obtain a PPP, a qualifying business was required to submit a PPP application signed by an authorized representative of the business. The PPP application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP. In the PPP application, the applicant (through its authorized representative) was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. If the applicant had no employees other than the owner, the applicant was required to provide the gross income amount from a 2019 or 2020 Internal Revenue Service (IRS) Form 1040, Schedule C. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. Additionally, the applicant was required to certify that the business was in operation as of February 15, 2020. The applicant was also required to certify that the information in the application was true and correct to the best of the applicant's knowledge.

PRETRIAL DIVERSION AGREEMENT - 2

A business's PPP application was received and processed, in the first instance, by a participating lender. If the participating lender approved the loan, data from the application, including information about the borrower, the total amount of the PPP, the listed number of employees, and the gross income amount, was transmitted by the lender to the Small Business Administration (SBA), an agency of the United States, in the course of processing the PPP. The location of the server through which the PPP application data was submitted was based on the date the application was processed by the SBA and the application number.

If a PPP application was approved, the participating lender funded the PPP using its own monies. PPP funds disbursed by participating lenders were fully guaranteed by the SBA. Once a PPP was funded, PPP lenders submitted disbursement details into the SBA E-Tran system in Sterling, Virginia. E-Tran transmitted the PPP processing fee to the lender through the United States Treasury's Financial Management System (FMS) to the Treasury.

In addition to the PPP, the CARES act also authorized additional funding for the Economic Injury Disaster Loan (EIDL) program. The Economic Injury Disaster Loan ("EIDL") program was a federal government relief program that provides low-interest funding to small business, renters, and homeowners affected by declared disasters. The EIDL program also offered EIDL Advance grants for certain qualifying businesses that did not have to be repaid. To receive an EIDL and/or an EIDL Advance for COVID-relief, a qualifying business must submit an application to the Small Business Administration ("SBA") with information about the applicant's operations including the number of employees and gross revenues and costs of goods in 12-months preceding January 31, 2020.

EIDL applications were received in cloud-based platforms. The location of the server through which the EIDL application was submitted was based on the date the application was processed by SBA and the application number. EDIL disbursements were initiated by the SBA Denver Finance Center located in Denver, Colorado, which transmitted the payment information through the FMS system to the Department of Treasury server located in the State of Virginia.

PRETRIAL DIVERSION AGREEMENT - 3

From between in or about January 2016 through in or about January 2022, Defendant was employed as an Airman with the United States Air Force. Defendant was not self-employed (*i.e.*, was not a sole proprietor) and had not been self-employed in 2019 or 2020.

Defendant met Taylor Kendall while stationed at Fairchild Airforce Base in the Eastern District of Washington. One day, while Defendant was at Kendall's residence, Kendall asked Defendant if he needed any money and said that he could get money for Defendant if Defendant provided Kendall with his bank account information, social security number, and identification. Defendant agreed and provided Kendall with the information he requested. Kendall recorded the information in his laptop. Kendall told Defendant he would have to provide Kendall with some of the money that was sent to the Defendant. When Defendant received the funds, he transferred money to Kendall as promised.

Following the disbursement of the first PPP loan, Kendall texted Defendant about obtaining a second PPP loan. As before, Kendall requested the Defendant send Kendall some of the funds received. When Defendant received the funds from the second PPP loan, he transferred money to Kendall as promised.

On or about June 24, 2020, EIDL Application #3306272257 was created and submitted via interstate wires by Kendall on behalf of Defendant requesting an EIDL and EIDL Advance. The application falsely and fraudulently stated that Defendant was a sole proprietor in the agricultural industry of a company with legal name "Roderick" d/b/a "Smith" which was formed on April 14, 2017. The application also falsely and fraudulently stated the company had ten employees, that its gross revenues for the 12-months prior to January 31, 2020, were $55,500, and that its costs of goods sold for the 12-month period prior to January 31, 2020, were $55,100.00. EIDL Application #3306272257 was declined by the SBA because Kendal had used Defendant's contact information on a prior EIDL application filed on June 19, 2020, for the company "Taylor" d/b/a "Kendall."

On or about July 21, 2020, EIDL Application #3311463594 was created and submitted by Kendall on behalf of Defendant requesting an EIDL and EIDL Advance.

PRETRIAL DIVERSION AGREEMENT - 4

The application falsely and fraudulently again stated that Defendant was a sole proprietor in the agricultural industry of a company with legal name "Roderick" d/b/a "Smith" which was formed on April 14, 2017. The application also falsely and fraudulently stated the company had ten employees, that its gross revenues for the 12-months prior to January 31, 2020, were $55,500, and that its costs of goods sold for the 12-month period prior to January 31, 2020, were $55,100.00. EIDL Application #3311463594 was declined by the SBA because in was duplicative of EIDL Application #3306272257 Kendall filed on June 24, 2020.

On or about March 5, 2021, Kendall submitted a PPP Loan Application to Capital Plus Financial, LLC, on behalf of Defendant requesting a PPP Loan in the amount of $20,832. The Application falsely and fraudulently stated that Defendant was the sole proprietor of a company with legal name "Roderick Smith" which was formed in 2019. The Application falsely and fraudulently represented that the company had one employee and 2019 total gross income of $104,500. In support of the Application, Kendall submitted a false and fraudulent IRS Schedule C form purporting to show a 2019 business profit of $104,500 and 2019 expenses of $10,350. The Schedule C and Loan Application contained Defendant's true and correct Social Security Number.

The information provided in the PPP Loan Application was materially false and fraudulent, and based upon that false and fraudulent information, the application was approved and assigned PPP Loan No. 19520787-10. Relying upon the false representations in the application, on April 8, 2021, Capital Plus Financial, LLC, PPP deposited $20,832 in PPP funds into Defendant's Navy Federal Credit Union account via an interstate Automated Clearing House (ACH) transfer. Between April 9, 2021, and April 14, 2021, Defendant transferred $3,000 to Kendall via interstate wires using the Zelle bank transfer service and an additional $6,000 to Kendal via interstate wires using Cash App.

Contrary to the representations in the PPP Loan Application, Defendant did not operate a business. Defendant did not use any of the funds to pay payroll expenses. The United States also incurred lender fees of $2,500 related to PPP Loan No. 19520787-10. The guarantee on this loan was exercised by Capital Plus Financial, LLC,

PRETRIAL DIVERSION AGREEMENT - 5

shifting the loss amount from Capital Plus Financial, LLC to the SBA directly.

On or about May 12, 2021, Kendall submitted a PPP Second Draw Borrower Application to Capital Plus Financial, LLC, on behalf of Defendant requesting a PPP Second Draw Loan in the amount of $20,833. The Application falsely and fraudulently stated that Defendant was the sole proprietor of a company with legal name "Roderick Smith" which was formed on January 1, 2019. The application falsely and fraudulently represented that the company had one employee and 2019 total gross income of $104,500. In support of the Application, Kendall submitted a false and fraudulent IRS Schedule C form purporting to show a 2019 business profit of $104,500 and 2019 expenses of $10,350. The Schedule C and Loan Application contained Defendant's true and correct Social Security Number.

The information provided in the PPP Second Draw Borrower Application was materially false and fraudulent, and based upon that false and fraudulent information, the application was approved and assigned PPP Loan No. 60295490-07. Relying upon the false representations in the application, on June 25, 2021, Capital Plus Financial, LLC, deposited $20,833 in PPP funds into Defendant's Navy Federal Credit Union account via an interstate Automated Clearing House (ACH) transfer. Between June 25, 2021, and July 12, 2021, Defendant transferred $1,500 to Kendall via interstate wires using the Zelle bank transfer service and an additional $6,250 to Kendal via interstate wires using Cash App.

Contrary to the representations in the PPP Loan Application, Defendant did not operate a business. Defendant did not use any of the funds to pay payroll expenses. The United States also incurred lender fees of $2,500 related to PPP Loan No. 60295490-07. The guarantee on this loan was exercised by Capital Plus Financial, LLC, shifting the loss amount from Capital Plus Financial, LLC to the SBA directly.

In total, the actual loss incurred through the material false and fraudulent pretenses, promises, and representations of Defendant and Kendall was at least $46,665.

4.   On authority from the Attorney General of the United States, through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, prosecution in the Eastern District of Washington for the Covered Conduct shall be

PRETRIAL DIVERSION AGREEMENT - 6

deferred for 48 months. This 48-month period begins on the date this Agreement is signed by both parties and accepted by the Court. If Defendant fulfills his entire restitution obligation as described in Paragraph 8, infra, prior to the end of the 48-month period, the Agreement may be accelerated to terminate as early as 24 months from the date the Agreement is signed by both parties and accepted by the Court.

5. The United States and Defendant stipulate and agree that the Court will maintain jurisdiction over this matter and that the Court shall be the final arbiter as to: (1) whether a party breached this Agreement, and if so; (2) the appropriate remedy, which may include either terminating the Agreement or modifying its terms. A modification may include extending the Agreement's 48-month period by an additional 12 months, for a total of 60 months, or accelerating the Agreement to terminate in as early as 24 months if Defendant fulfills his restitution obligation, as described in Paragraphs 4 and 8.

## II. Terms

Defendant stipulates and agrees to the following terms:

6. **Waiver of Constitutional Rights.** Defendant, by entering this Agreement, agrees to waive certain constitutional rights including (1) the right to a jury trial; (2) the right to see, hear, and question witnesses; (3) the right to compel witnesses to testify; (4) the right to remain silent at trial; and (5) the right to testify at trial. Defendant knowingly and voluntarily waives the above rights.

7. **Supervision.** Defendant stipulates and agrees to be supervised by the U.S. Probation Office during this 48-month period (or longer, if the period is extended by the Court). Further, Defendant understands the following:

   a. Defendant shall not violate any federal, state, or local law. This term does not apply to minor civil infractions such as speeding.
   b. If Defendant is arrested or has any official contact with law enforcement in a civil or criminal investigative capacity, Defendant

PRETRIAL DIVERSION AGREEMENT - 7

shall notify Defendant's supervising pretrial diversion officer within two business days.

c. Defendant shall live within the jurisdiction of the Eastern District of Washington. If Defendant seeks to reside outside the District, Defendant shall notify and seek the approval of Defendant's supervising pretrial diversion officer so that appropriate arrangements in light of the Agreement can be made.

d. Defendant shall maintain employment in a lawful occupation. When out of work, Defendant shall notify Defendant's supervising pretrial diversion officer. In the event that Defendant becomes self-employed, Defendant shall provide evidence of such self-employment.

e. Defendant shall report to Defendant's supervising pretrial diversion officer as directed by the Court or U.S. Probation. Any failure to abide by the reporting requirements as established by the Court or U.S. Probation shall be deemed a violation of the Agreement.

f. Defendant shall not possess, control, consume, and/or use any illegal controlled substance, including marijuana, nor own, possess, or have access to any firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers), unless it has been disclosed to, and approved by, U.S. Probation.

g. Defendant will allow the probation officer to visit at any time at Defendant's home or elsewhere and will permit the probation officer to take any items prohibited by the conditions of supervision that he or she observes in plain view.

h. Defendant shall abide by any other conditions imposed by Defendant's supervising pretrial diversion officer.

PRETRIAL DIVERSION AGREEMENT - 8

8.  **Restitution.** As an express condition of this Agreement and the promises made by the United States herein, Defendant agrees to make full restitution to the United States Small Business Administration (SBA) and the loan servicer, as follows:

   a. Defendant agrees to repay in full the remaining amount owed on PPP Loan No. 60295490-07, which presently amounts to $20,833.00 in principal, $475.68 in interest, and a $2,500.00 lender fee, for a total restitution amount of $23,808.68. Defendant agrees to make a payment of at least $500.00 per month towards PPP Loan No. 60295490-07, by the 15th day of each month, until it is paid off in full. Defendant agrees to make this payment directly to the SBA via the SBA's Loan Payment Exceptions portal located at https://www.pay.gov/public/form/start/1263437081, as detailed in Attachment A to this Agreement.

   b. Defendant agrees to repay in full the remaining amount owed on PPP Loan No. 19520787-10, which presently amounts to $20,832.00 in principal, $355.00 in interest and a $2,500.00 lender fee, for a total restitution amount of $23,687.00. Defendant agrees to make a payment of at least $500.00 per month towards PPP Loan No. 19520787-10, by the 15th day of each month, until it is paid off in full. Defendant agrees to make this payment directly to the SBA via the SBA's Loan Payment Exceptions portal located at https://www.pay.gov/public/form/start/1263437081, as detailed in Attachment A to this Agreement.

   c. Defendant agrees that his obligation to pay restitution of $47,495.68 continues until full restitution is made and agrees that he is obligated to make full restitution of $47,495.68 regardless of whether he breaches this Agreement.

   d. Until Defendant's restitution obligations are paid in full, Defendant agrees to fully disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party.

   e. Defendant voluntarily agrees that the United States may immediately record a lien against all property and rights to property of the Defendant, which shall be released upon full payment of the restitution balance.

   f. Defendant agrees that if he fails to make restitution payments as provided in this Paragraph, the United States shall be entitled to the entry of a money judgment against the Defendant in the amount of the outstanding balance. The parties further agree that if a money judgment is entered, the United States shall be entitled to discovery in aid of collection of the money judgment.

   g. Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If the Defendant fails to make his restitution payments as agreed in this Paragraph, he shall be enrolled in TOP and TOP may take all or part of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations.

   h. Defendant understands that if the Defendant fails to make his restitution payments as agreed in this Paragraph, the United States may pursue any available remedies to ensure the restitution obligation is satisfied, including, but not limited to, garnishment and/or execution against available funds, wages, or assets.

9. **Tolling.** Defendant stipulates and agrees to toll the running of all applicable statutes of limitations and any time-based defenses for the Covered Conduct. This tolling shall run from the date the Agreement is signed by all parties until the

PRETRIAL DIVERSION AGREEMENT - 10

Agreement expires or is terminated by the Court. Defendant stipulates and agrees that the Agreement's tolling provision does not abridge or curtail the applicable statute of limitations in any way, but rather extends the applicable statute of limitations by the period of time that the Agreement is in effect.

Defendant further expressly waives indictment and all rights to a speedy indictment and/or trial pursuant to the Sixth Amendment of the United States Constitution, 18 US.C. § 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the Eastern District of Washington for the period during which this Agreement is in effect.

10. **Debriefings.** Defendant agrees to participate in full debriefings by federal and local investigative agencies about all of Defendant's knowledge of illegal conduct, at times and places to be decided by these agencies. Defendant agrees to provide complete, accurate and truthful information to these agencies. Defendant agrees to not falsely implicate any person or entity and agrees to not protect any person or entity through false information or omission. It is understood that Defendant may have an attorney present at any or all such debriefings.

11. **Testimony.** Defendant agrees to testify completely and truthfully at any subsequent hearing, grand jury proceeding, or other federal or state court proceeding involving co-defendants or any other person involved in criminal activity, whether called by any party.

12. **Documentary Information.** Defendant agrees to provide, or make available, any non-privileged documents or electronically-stored information in Defendant's possession, custody, or control, relevant to Defendant's conduct or the United States' investigation, and to provide access to any phone, computer, or electronic device on which any such documents or information may be found.

13. **Notification.** Defendant agrees to immediately notify the United States Attorney's Office if Defendant is contacted, interviewed, subpoenaed or requested to testify for or against any other person.

PRETRIAL DIVERSION AGREEMENT - 11

14. **Breach.** If the Court, after a hearing, terminates the Agreement based on a breach by Defendant, the United States may resume its prosecution against Defendant as to the charge(s) under investigation, and any additional charges.

15. **Admissibility of the Agreement in Prosecution.** In the event that the Court terminates the Agreement based on a breach by Defendant, Defendant stipulates and agrees that the Agreement and Defendant's admissions contained therein shall be admissible against Defendant at any trial, sentencing, or other related proceeding.

The United States stipulates and agrees to the following:

16. **Deferred Prosecution and Dismissal.** The United States stipulates and agrees to defer prosecution of the above-captioned matter for a period of 48 months (or up to 60 months if the Agreement is extended). When and if Defendant satisfies all the requirements of the Agreement (including any modifications or extensions), the United States stipulates that it will seek dismissal with prejudice of the Information filed against Defendant pursuant to this Agreement. Except in the event of a violation by Defendant of any term of this Agreement, the United States will bring no additional charges against Defendant relating to Defendant's conduct as described in the Information and the Covered Conduct set forth above. This agreement does not provide any protection against prosecution for any crimes except as set forth above. Defendant and the United States understand that the Court must approve deferral under the Speedy Trial Act, in accordance with 18 U.S.C. § 3161(h)(2). Should the Court decline to defer prosecution for any reason: (1) both the United States and Defendant are released from any obligation imposed upon them by this Agreement; and (2) this Agreement shall be null and void, except for the tolling provisions set forth herein.

PRETRIAL DIVERSION AGREEMENT - 12

### III. Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____          9/4/2024
Jeremy J. Kelley                                             Date
Assistant U.S. Attorney

_____          9/5/2024
Dan Fruchter                                                 Date
Assistant U.S. Attorney

PRETRIAL DIVERSION AGREEMENT - 13

I have read the Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. I understand the terms and conditions of the Agreement and agree to comply with them.

_____        09/05/24
Roderick Leneal Smith                                    Date
Defendant

_____        9/5/2024
Steve Hormel                                                  Date
Attorney for Defendant


Approved without passing judgment on the merits or wisdom of this diversion.

_____        September 25, 2024
Thomas O. Rice                                            Date
United States District Judge

PRETRIAL DIVERSION AGREEMENT - 14

# Attachment A

SBA Loan Payment Exceptions Form:

Returning PPP funds directly to SBA when a loan has been forgiven or guaranteed purchased:

Use the link: **Pay.gov - SBA Loan Payment Exceptions**

**Click on Continue to Form**



Make appropriate selection for Borrower or Non-Borrower and complete the fields. The loan number must be entered. A new form will need to be submitted for each loan that a payment is being made on.

Non-borrowers will need to provide their contact information as well as the borrower's name:

**SBA Loan Payment Exceptions**

✓ — 2 — 3 — 4 — 5
Before You Begin  Complete Agency Form  Enter Payment Info  Review & Submit  Confirmation

**SBA** U.S. Small Business Administration

**U.S. Small Business Administration (SBA)**
**Loan Payment Exceptions**

*\* Required Field*

Who is making this payment? *

○ Borrower
● Non Borrower

==Borrower or Business Name== *

[  ]

Non Borrower Name *

[  ]

Non Borrower Phone Number *

[  ]

Non Borrower Email Address *

[  ]

==SBA 10-digit Loan Number== *

[  ]